FILED
United States Court of Appeals
Tenth Circuit

June 28, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

VERNON LEE BAKER,

Defendant-Appellant.

No. 11-2211

(D.C. No. 1:08-CR-01680-PJK-1)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.[**]

Pursuant to 18 U.S.C. § 922(g), a felon may not possess either a firearm or ammunition. And, of course, for a defendant to be found guilty of this offense, the Government must prove that a defendant "possessed" the firearm or ammunition. In this case, a jury convicted Defendant Vernon Lee Baker of being a felon in possession of a firearm and ammunition. But Defendant argues the Government did not present sufficient evidence to the jury to support a finding he possessed a firearm

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

and ammunition. Defendant appeals pursuant to 28 U.S.C. § 1291. "We review sufficiency of the evidence claims de novo, asking only whether, taking the evidence—both direct and circumstantial, together with reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find [Defendant] guilty beyond a reasonable doubt." United States v. Davis, 437 F.3d 989, 993 (10th Cir. 2006). Applying this standard, we hold a reasonable jury could find Defendant guilty beyond a reasonable doubt and affirm.

I.

Our story begins on a June evening outside the Sandia Vista apartments in Albuquerque, New Mexico. Patricia Guereca, a resident of the apartment complex, hosted her neighbor as well as five children ranging from ages two to eleven for dinner. The children were playing on Guereca's apartment's balcony when, according to Guereca, she observed Defendant, who resided in the apartment across from hers, "messing around with a gun" in the apartment complex's well-lighted parking lot. ROA vol. 4, 173, 180. Defendant, leaning on a white, older model car resembling a Buick, spoke to Guereca's neighbor. Guereca testified the neighbor instructed Defendant to put the gun away because of the children. Guereca described the gun as "big and black." Id. at 176. Although Guereca admitted she knew little about guns, she stated the gun was "big enough" for her to "see it and be like, whoa." Id. At that point, Guereca and her neighbor gathered the children inside and Guereca testified Defendant placed the gun in the trunk of the white automobile and left. Id.

2

at 177.  Guereca then testified Defendant returned to the parking lot, removed the gun from the trunk, and wiped it.  Id. at 179, 181.  Guereca further testified Defendant handled "bullets."  Id. at 181.  Guereca again made the children go inside the apartment and she called law enforcement.  Id. at 179.  When calling law enforcement, Guereca provided a false name because she "didn't want any of this to come back to [her]."  Id. at 183.

Two officers arrived on the scene in response to the telephone call, but the officers found no one in the parking lot.  Id. at 217.  One of the officers approached Defendant, who was on an apartment balcony, to ask about the ownership of the Buick.  Id. at 219.  As the officer spoke with Defendant, the officer observed Defendant matched the clothing description as well as the physical features of the man provided in the dispatch notification.  Id. at 220.  Like Guereca, Defendant provided a false name to the officers.  Id. at 222.  Defendant claimed ownership of the automobile, but denied having a weapon in the vehicle.  Id. at 226.  The officers soon discovered, however, that the automobile belonged to Defendant's nephew. Officers asked to search the trunk.  Id. at 227.  Defendant denied them access to the trunk.  Id. at 226.  A field technician then sealed the automobile and law enforcement transported the vehicle to a secure facility until it could obtain a warrant to search the automobile.  Id. at 262.  Law enforcement obtained a warrant and found a loaded Mossberg shotgun in the trunk of the automobile.  Id. at 265.

Law enforcement conducted a DNA analysis of the gun's pump handle, grip

3

area, and trigger and guard area. In addition, law enforcement swabbed four separate shotgun casings. On three of the four casings, law enforcement detected no DNA profiles. Id. at 358. On the fourth casing, law enforcement excluded Defendant as a possible contributor of the DNA. Id. at 357. As to the trigger and guard area of the gun, law enforcement also excluded Defendant as a possible contributor of the DNA. Id. at 357. The pump handle area of the gun contained too much DNA for law enforcement to make a determination whether Defendant contributed to the DNA. Id. at 363. Law enforcement, however, could not exclude Defendant as a possible contributor to the DNA on the grip area of the gun. Id. at 357. Law enforcement's forensic scientist determined that the DNA found on the grip area most likely consisted of a mixture of at least three individuals. Id. at 364. The forensic scientist next determined the DNA on the grip area most likely came from Defendant and two unknown individuals rather than three unknown individuals. Id. at 365.

At trial, a defense expert testified law enforcement should have tested Defendant's nephew and that law enforcement should have compared the nephew's sample to the DNA on the grip area to confirm Defendant could not be excluded as a contributor. Defendant argued the absence of his nephew's DNA sample rendered law enforcement's statistical analysis unreliable.

II.

The sole issue before us on appeal is whether the jury had sufficient evidence, taken in the light most favorable to the Government, to convict Defendant of being

4

a felon in possession of a firearm. "We do not question the jury's credibility determinations or its conclusions about the weight of the evidence." Davis, 437 F.3d at 993. Importantly, "[t]he evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt. Instead, the evidence only has to reasonably support the jury's finding of guilt beyond a reasonable doubt." Id.

The government must establish three elements beyond a reasonable doubt to obtain a conviction under 18 U.S.C. 922(g)(1): "(1) the defendant was previously convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce." United States v. Kitchell, 653 F.3d 1206, 1228 (10th Cir. 2011). At trial, defendant stipulated the first and third prongs were met. Accordingly, possession is the only prong at issue.

A.

On appeal, Defendant's challenge to his conviction first focuses on the accuracy of law enforcement's DNA analysis. Defendant argues his nephew had access to the gun, as well as the trunk of the automobile. Because of this access, Defendant contends law enforcement should have tested his nephew's DNA against the sample found on the gun. Defendant asserts he and his nephew likely have DNA genetic markers in common. In addition, Defendant states one of his DNA markers was absent from the sample found on the gun. Defendant further argues law enforcement should have used substrate controls to test the background DNA and

5

should have eliminated DNA transfer as a means of depositing the DNA on the gun.[1]

Defendant also challenges Guereca's eyewitness testimony. Defendant asserts Guereca testified vaguely, particularly with respect to a description of the gun. Defendant claims Guereca "was never asked to identify the Mossberg Maverick Arms, Model 88, 12-gauge shotgun, Serial No. 21 MV38998L, that was listed in the indictment." Defendant argues the Government failed to link him to the gun named in the indictment and the element of possession cannot be met because the jury cannot infer the "big and black" object was the same object as the gun in the indictment.

## B.

We turn now to the evidence presented at trial, starting with Guereca's eyewitness testimony. Guereca testified she saw Defendant, a man she recognized as her neighbor, holding a gun in a "pretty bright" parking lot. ROA vol. 4, 173, 180. Although she could not identify the gun as a Mossberg, she clearly identified the object as a big and black gun. Id. at 176. She testified Defendant wiped the gun and she saw him with "bullets." Id. at 181. Guereca testified Defendant placed the gun in the trunk before leaving the parking lot the first time and removed the gun from the trunk when he returned the second time. Id. at 177, 179. Mark Andrew

---

[1] According to Defendant's expert, "substrate" is a location where one can collect evidence. ROA vol. 4, 414. Therefore, substrate controls would test surrounding locations such as the trunk and surfaces in the automobile to provide information about the background DNA present at the crime scene.

Krueger, the detective with the Albuquerque Police Department who executed the search warrant of the automobile trunk, testified he found a loaded Mossberg shotgun in the trunk of the automobile. Id. at 265. Moreover, Guereca not only identified Defendant's physical characteristics at the scene, but also identified Defendant later at a photo array and at trial. Id. at 175, 188, 190. Guereca additionally identified the gun at trial. The district court admitted the Mossberg listed in the indictment as Government's Exhibit 1. Guereca stated, "[Exhibit 1] looks like the gun that he had . . . and it was big like that." Id. at 189.

We need not consider Defendant's arguments as to the DNA analysis because the eyewitness testimony from Guereca provides ample evidence to support the jury's verdict. Based on Guereca's testimony, a jury could find Defendant held a big, black gun in the parking lot and placed that gun in the trunk of his nephew's automobile. Because Guereca saw Defendant place the gun in the trunk and remove it from the trunk, the jury could conclude Defendant had access to the trunk of the automobile where law enforcement found the gun. The jury did not have to pile inference upon inference to conclude Defendant knowingly possessed that gun. We "do not question the jury's credibility determinations or its conclusions about the weight of the evidence." Davis, 437 F.3d at 993. Accordingly, Defendant's

7

conviction is AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge